```
                          UNITED STATES DISTRICT COURT
                              DISTRICT OF MINNESOTA
```

| UNITED STATES OF AMERICA, | Case No. 06-CR-0249 (PJS) |
| --- | --- |
| | Case No. 11-CV-3016 (PJS) |
| Plaintiff, | Case No. 11-CV-3017 (PJS) |
| v. | ORDER |
| JON HENRY SWEENEY (1) and | |
| MICHELLE ANN SWEENEY (2), | |
| Defendants. | |

Michelle E. Jones and Kevin S. Ueland, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Katherine Menendez, FEDERAL DEFENDER'S OFFICE, for defendant Jon Henry Sweeney.

Paul J. Edlund, ATTORNEY, for defendant Michelle Ann Sweeney.

Defendants Jon and Michelle Sweeney, a married couple, were convicted by a jury of conspiracy, unauthorized interception of cable service, and currency structuring. ECF Nos. 245, 246. The Court sentenced them to prison terms of 70 months and 42 months, respectively. Their convictions and sentences were affirmed on direct appeal. *United States v. Sweeney*, 611 F.3d 459 (8th Cir. 2010).

This matter is before the Court on the Sweeneys' motions, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct their sentences. The Court appointed counsel for the Sweeneys, held an evidentiary hearing, and received post-hearing briefs. Having considered the evidence and the parties' submissions, the Court finds that the Sweeneys are not entitled to relief. The Sweeneys' motions are therefore denied.

# I. STANDARD OF REVIEW

At trial, Jon Sweeney was represented by Charles Hawkins, and Michelle Sweeney was represented by John Brink. The Sweeneys allege that Hawkins and Brink were ineffective for failing to pursue an advice-of-counsel defense and for failing to present testimony from a cable-industry expert. Jon Sweeney separately alleges that his Sixth Amendment right to counsel was violated because Hawkins was absent from the courtroom for a few minutes during the trial, and further alleges that Hawkins was ineffective on appeal for failing to raise the issue of his absence.[1]

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Generally speaking, to prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) his counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687, 694. (Jon Sweeney argues that he need not show

---

[1]At the evidentiary hearing, there was some suggestion that *Michelle* might be able to base a Sixth Amendment claim on the absence of *Jon's* attorney. But Michelle did not submit a post-hearing brief on this issue, despite being invited to do so. Hr'g Tr. 134-35, 140, Sept. 20, 2012 [ECF No. 448]. In any event, because Brink was present at all times during the trial, Michelle cannot claim a Sixth Amendment violation based on Hawkins's absence — at least not without demonstrating actual prejudice, which she has not done. *Cf. Morgan v. Hardy*, 662 F.3d 790, 804-05 (7th Cir. 2011) (state court's decision to require a showing of prejudice where counsel was periodically absent but co-counsel was continuously present was not contrary to clearly established law); *United States v. Rosnow*, 981 F.2d 970, 971-72 (8th Cir. 1992) (because defendants were represented by duly licensed co-counsel on appeal, their counsel's suspension from the practice of law during pendency of appeal did not deny them effective assistance of counsel).

prejudice in order to prevail on his claim regarding Hawkins's absence from the courtroom; the Court addresses that issue below.)

In reviewing ineffective-assistance claims, a court must be careful to avoid second-guessing counsel's strategic decisions. "Judicial scrutiny of counsel's performance must be highly deferential. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* at 689.

## II.  GROUND ONE: ADVICE-OF-COUNSEL DEFENSE

From approximately 1995 through 2001, the Sweeneys owned and operated Micro-Star Technology ("Micro-Star"). Micro-Star manufactured cable-television descramblers and other cable-television equipment, which it then sold to wholesalers and distributors. In order to find the Sweeneys guilty of unauthorized interception of cable service, the jury had to find that the Sweeneys intended that the equipment that they sold be used for the unauthorized interception of cable service. ECF No. 244 at 9. The thrust of the Sweeneys' defense was that they lacked such intent. Hr'g Tr. 48-49, Sept. 20, 2012 [ECF No. 448].

The Sweeneys claim that they entered the descrambler business only after receiving an opinion from their former attorney, Anthony Siciliano, that their intended business model was lawful. Specifically, Jon Sweeney testified that Siciliano advised him that, as long as Micro-Star did not sell to end users, it would not run afoul of the law. Hr'g Tr. 17. Jon also testified that Siciliano gave him an opinion letter to that effect, but the letter had been misplaced. Hr'g Tr. 18. The Sweeneys argue that Hawkins and Brink should have defended them at trial on the basis of Siciliano's legal advice.

The Court credits the testimony of Hawkins, however, that Hawkins contacted Siciliano and asked him about this alleged advice, and that Siciliano denied telling the Sweeneys that their business practices were legal and denied writing a letter to that effect. Hr'g Tr. 97. Hawkins also testified that, even if Siciliano had been willing to support the Sweeneys' account, Hawkins was concerned about Siciliano's credibility because Siciliano had recently been disbarred. Hr'g Tr. 92, 99. Finally, Hawkins noted that Siciliano initially represented Michelle Sweeney in this criminal case, and thus waiving the attorney-client privilege (a necessary consequence of pursuing an advice-of-counsel defense) was of particular concern. Hr'g Tr. 100. Hawkins said that he relayed this information, and his concerns, to the Sweeneys as well as to Brink. Hr'g Tr. 99. Brink also recalled discussions about Siciliano and the fact that Siciliano disputed the Sweeneys' characterization of his advice. Hr'g Tr. 50-51. Brink shared Hawkins's concern about Siciliano's credibility. Hr'g Tr. 50-51. The Sweeneys did not disagree with Hawkins's decision not to call Siciliano. Hr'g Tr. 99-100.

Based on this testimony, the Court finds that Hawkins and Brink adequately investigated the Sweeneys' potential advice-of-counsel defense and reasonably concluded that pursuing that defense — and calling Siciliano as a witness in support of that defense — was unlikely to be helpful and quite likely to be detrimental. The Sweeneys are not entitled to relief on the ground that their lawyers were ineffective for failing to present an advice-of-counsel defense.

### III. GROUND TWO: CABLE-INDUSTRY EXPERT

The Sweeneys next contend that Hawkins and Brink were ineffective for failing to present expert testimony that there were lawful uses for the descramblers sold by Micro-Star. In their § 2255 petitions, the Sweeneys identified Bernard J. Lechner as a cable-industry expert who

should have been called as a witness at trial and who would have testified that there were lawful uses for the descramblers. There is, however, no evidence in the record about what Lechner would have said had he been called to testify at the Sweeneys' trial. Lechner did not testify at the evidentiary hearing on the Sweeneys' § 2255 petitions,[2] and the only evidence before the Court relating to Lechner is a proposed consulting agreement and Lechner's curriculum vitae, neither of which identify the content of his proposed testimony. ECF Nos. 408-1, 411-1.

On this record, the Sweeneys have neither shown that their attorneys were unreasonable in failing to present expert testimony, nor that there is a reasonable probability that, but for the alleged ineffectiveness, the results of the trial would have been different. "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Harrington v. Richter*, 131 S. Ct. 770, 791 (2011). Without any showing that an expert could have presented testimony favorable to the Sweeneys, the Court cannot conclude that Hawkins and Brink were ineffective for choosing to rely instead on cross-examination of the government's witnesses. Likewise, without such a showing, the Court cannot conclude that the Sweeneys were prejudiced by their attorneys' decision, particularly in light of the fact that other witnesses testified about the descramblers' lawful uses. *See* Hr'g Tr. 38-39, 53-54; *cf. United States v. Davis*, 406 F.3d 505, 509 (8th Cir. 2005) (affirming denial of habeas relief where petitioner failed to show that the scientific basis for challenging the state's evidence was available at the time of his trial); *United States v. White*,

---

[2]The Sweeneys initially moved for Lechner's appointment as an expert witness in this § 2255 proceeding. *See* ECF Nos. 409, 412. Upon appointing counsel for the Sweeneys, the Court denied those pro se motions without prejudice so that the Sweeneys' counsel could determine whether to seek the appointment of Lechner as an expert witness. ECF No. 433. The Sweeneys' counsel did not renew the request.

341 F.3d 673, 680 (8th Cir. 2003) (rejecting *Strickland* claim where petitioner failed to show that the witness could have been located or that he would have provided favorable testimony). By the trial's end, the Sweeneys' attorneys had repeatedly elicited evidence of — and repeatedly drawn the jury's attention to — the fact that descramblers can be used lawfully. The Sweeneys are therefore not entitled to relief on the ground that their lawyers failed to present the testimony of a cable-industry expert.

IV. GROUNDS THREE AND FOUR: ABSENCE OF COUNSEL

*A. Background*

The Sweeneys' trial lasted 13 days — the better part of three weeks. On April 23, 2008, about midway through the trial, the government called one of the Sweeneys' alleged co-conspirators, Daniel Quade, as a witness. During the government's direct examination of Quade, Hawkins, who frequently needed to use the restroom because of a medical condition, Hr'g Tr. 55, approached the bench and asked if he could leave the courtroom for a moment to go to the bathroom, Trial Tr. 1364 [ECF No. 354].[3] The Court asked Hawkins whether it would be alright to continue in his absence, and Hawkins said that would be fine. While trial continued, Hawkins ducked out of the courtroom, used the restroom, and returned a couple of minutes later.

The Court made a mistake. It should not have allowed Hawkins to leave — at least without calling a recess. But this was one of the first criminal cases tried by the undersigned, and, before being appointed to the bench, the undersigned had no experience with criminal trials. Moreover, both Hawkins and Brink were experienced criminal-defense attorneys, and they were

---

[3]There is more than one copy of the trial transcript in the record; the pagination differs slightly because in one of the versions certain portions (such as counsels' opening statements) are omitted. The Court cites to the more-complete version.

opposed by two experienced prosecutors. The Court assumed that if there was anything wrong with proceeding in Hawkins's brief absence, one of those four experienced criminal practitioners would have said something. The Court regrets its error and appreciates the efforts of counsel to help the Court figure out the legal ramifications of its error.

The record does not indicate exactly when Hawkins returned to the courtroom, and the parties dispute the length of time that he was gone. Michelle Sweeney estimated that Hawkins was gone for 10 minutes. Hr'g Tr. 39. Both Hawkins and Brink, however, recalled that Hawkins was gone for no more than 3 minutes. Hr'g Tr. 56, 103. The Court credits Brink's and Hawkins's testimony, because it comports with the Court's own recollection, and because it is consistent with other evidence (such as the layout of the cramped temporary facilities in which the case was tried and Brink's observations of Hawkins's behavior on the morning of the § 2255 hearing, Hr'g Tr. 57).

Ultimately, however, how long Hawkins was gone is not as important as what testimony Hawkins missed while he was gone. The transcript indicates the point at which Hawkins left the courtroom. Tr. 1364. The transcript also indicates that Hawkins had returned to the courtroom by the time that Quade had given approximately six pages' worth of testimony. Trial Tr. 1370. At that point, the Court asked Hawkins a question, and he responded. Almost certainly, Hawkins had returned to the courtroom at least a couple of minutes before the Court questioned him, but the Court will assume, for purposes of its analysis, that Hawkins was absent from the moment that the Court excused him to the moment, six pages later, when he responded to the Court's question.

Jon Sweeney argues that, because Hawkins was physically absent from the trial for a few minutes, his Sixth Amendment right to counsel was violated, and he is entitled to a new trial.

*B. Analysis*

Courts have taken many conflicting and (sometimes) confusing approaches in analyzing whether and under what circumstances a defense lawyer's temporary absence from a criminal proceeding requires reversal of a conviction. *Compare Green v. Arn*, 809 F.2d 1257, 1263 (6th Cir. 1987) (2-1 decision) (holding that a temporary absence from trial was per se prejudicial and not subject to harmless-error analysis), *vacated on other grounds*, 484 U.S. 806 (1987), *reinstated*, 839 F.2d 300 (6th Cir. 1988), *with Vines v. Unites States*, 28 F.3d 1123, 1130-31 (11th Cir. 1994) (2-1 decision) (holding that counsel's temporary absence was harmless). Because courts have taken so many inconsistent approaches, it is simply impossible for this Court to take an approach that does not conflict with a lot of case law. *Any* approach that *any* court takes will necessarily conflict with numerous judicial decisions. With that in mind, the Court now turns to two questions:

First, was Jon Sweeney deprived of his right to counsel under the Sixth Amendment when his attorney was absent for about three minutes during his trial? This question, in turn, requires the Court to decide whether Sweeney must establish that Hawkins's absence prejudiced him or whether prejudice will instead be presumed.

Second, if Sweeney was deprived of his right to counsel under the Sixth Amendment, was that error harmless beyond a reasonable doubt? This question requires the Court to determine whether the harmless-error analysis of *Chapman v. California*, 386 U.S. 18 (1967) applies to the

Jon Sweeney argues that, because Hawkins was physically absent from the trial for a few minutes, his Sixth Amendment right to counsel was violated, and he is entitled to a new trial.

*B. Analysis*

Courts have taken many conflicting and (sometimes) confusing approaches in analyzing whether and under what circumstances a defense lawyer's temporary absence from a criminal proceeding requires reversal of a conviction. *Compare Green v. Arn*, 809 F.2d 1257, 1263 (6th Cir. 1987) (2-1 decision) (holding that a temporary absence from trial was per se prejudicial and not subject to harmless-error analysis), *vacated on other grounds*, 484 U.S. 806 (1987), *reinstated*, 839 F.2d 300 (6th Cir. 1988), *with Vines v. Unites States*, 28 F.3d 1123, 1130-31 (11th Cir. 1994) (2-1 decision) (holding that counsel's temporary absence was harmless). Because courts have taken so many inconsistent approaches, it is simply impossible for this Court to take an approach that does not conflict with a lot of case law. *Any* approach that *any* court takes will necessarily conflict with numerous judicial decisions. With that in mind, the Court now turns to two questions:

First, was Jon Sweeney deprived of his right to counsel under the Sixth Amendment when his attorney was absent for about three minutes during his trial? This question, in turn, requires the Court to decide whether Sweeney must establish that Hawkins's absence prejudiced him or whether prejudice will instead be presumed.

Second, if Sweeney was deprived of his right to counsel under the Sixth Amendment, was that error harmless beyond a reasonable doubt? This question requires the Court to determine whether the harmless-error analysis of *Chapman v. California*, 386 U.S. 18 (1967) applies to the

type of Sixth Amendment violation alleged by Sweeney — and, if so, whether this particular violation was harmless beyond a reasonable doubt.[4]

For the reasons described below, the Court finds that Sweeney was deprived of his right to counsel in violation of the Sixth Amendment, that the harmless-error analysis of *Chapman* does apply to that violation, and that, because the violation of Sweeney's right to counsel was harmless beyond a reasonable doubt, Sweeney is not entitled to a new trial.

1. Was the Sixth Amendment Violated?

As discussed above, under *Strickland*, a defendant must ordinarily show that his counsel's deficiencies prejudiced him in order to prevail on a claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 694. It is important to note that the "prejudice" prong of *Strickland* is *not* a harmless-error inquiry; rather, if the defendant was not prejudiced, then there is no violation (harmless or not) of the Sixth Amendment. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006) ("a violation of the Sixth Amendment right to *effective* representation is not 'complete' until the defendant is prejudiced"); *Lockhart v. Fretwell*, 506 U.S. 364, 369 n.2 (1993). Thus, under *Strickland*, if Sweeney cannot show that he was prejudiced by Hawkins's brief absence from the courtroom, then Sweeney cannot establish a violation of the Sixth Amendment.

In *United States v. Cronic*, however, the Supreme Court held that prejudice must be presumed when a defendant has experienced "the complete denial of counsel . . . at a critical

---

[4]It may be that the more lenient standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) should apply rather than the harmless-beyond-a-reasonable-doubt standard of *Chapman*. But the Court need not resolve that issue, as the Court finds that the Sixth Amendment violation was harmless beyond a reasonable doubt.

stage of his trial." 466 U.S. 648, 659 (1984). Applying *Cronic*, courts have held that when a defendant's attorney is absent during a "critical stage" of a criminal proceeding, the defendant's Sixth Amendment rights have been violated whether or not the defendant can show actual prejudice.[5]

The question, then, is whether Hawkins was absent during a "critical stage" of the proceeding. Courts essentially take two approaches to identifying whether a stage of a criminal proceeding is "critical." Some courts take what might be called a "categorical" approach; they focus the type of event (e.g., arraignment, motions hearing, or trial) and ask whether, as a general matter, that type of event is a "critical stage."[6] Other courts take what might be called a "case-

---

[5]*See, e.g.*, *United States v. Turner*, 975 F.2d 490, 495-96 (8th Cir. 1992) (no need to show prejudice where counsel was absent for parts of eight trial days); *Burdine v. Johnson*, 262 F.3d 336, 349 (5th Cir. 2001) (en banc) ("When we have no basis for assuming that counsel exercised judgment on behalf of his client during critical stages of trial, we have insufficient basis for trusting the fairness of that trial and consequently must presume prejudice."); *Tippins v. Walker*, 77 F.3d 682, 687 (2d Cir. 1996) ("the buried assumption in our *Strickland* cases is that counsel is present and conscious to exercise judgment, calculation and instinct"); *Vines*, 28 F.3d at 1127 ("*Strickland* assumes the presence of counsel and is therefore inapplicable in the absence of counsel context."); *United States v. Taylor*, 933 F.2d 307, 312 (5th Cir. 1991) ("there is a great difference between having a bad lawyer and having no lawyer"); *Siverson v. O'Leary*, 764 F.2d 1208, 1216 (7th Cir. 1985) ("The crucial premise on which the *Strickland* formula rests — that counsel was in fact assisting the accused during the proceedings and should be strongly presumed to have made tactical judgments 'within the wide range of reasonable professional assistance,' 104 S. Ct. at 2066 — is totally inapplicable when counsel was absent from the proceedings and unavailable to make any tactical judgments whatsoever."); *cf. Kansas v. Ventris*, 556 U.S. 586, 592 (2009) (holding that the Sixth Amendment violation occurs when the uncounseled interrogation is conducted, rather than when the evidence is used at trial); *Gonzalez-Lopez*, 548 U.S. at 148 ("Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the [retained] lawyer he wants, regardless of the quality of the representation he received.").

[6]*See, e.g.*, *Ditch v. Grace*, 479 F.3d 249, 253 (3d Cir. 2007) (holding that a Pennsylvania preliminary hearing is a critical stage based on what *may* happen at such proceedings); *Burdine*, 262 F.3d at 347 ("To justify a particular stage as 'critical,' the Court has not required the

(continued...)

-10-

by-case" approach; they undertake a detailed factual analysis of what actually occurred during the lawyer's absence in order to decide whether the lawyer missed a "critical stage" of the proceeding.[7]

The Court regards the categorical approach as more consistent with Supreme Court precedent. The case-by-case approach, which relies on hindsight to determine whether the stage of the proceeding missed by the attorney was "critical" — i.e., whether the defendant was *in fact* prejudiced by his lawyer's absence — does not seem consistent with the Supreme Court's framework, which examines "whether *potential* substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." *United States v. Wade*, 388 U.S. 218, 227 (1967) (emphasis added); *see also United States v. Taylor*, 933 F.2d 307, 312 (5th Cir. 1991) ("critical stages of a criminal proceeding are those stages of the proceeding at which the substantial rights of a defendant *may* be affected" (emphasis added)). In the Court's view, what *Cronic* means by "critical stage" is simply any stage of a criminal proceeding at which the accused has the right to assistance of counsel under

---

[6](...continued)
defendant to explain how having counsel would have altered the outcome of his specific case. Rather, the Court has looked to whether the substantial rights of a defendant may be affected during that type of proceeding." (citation and quotations omitted)).

[7]*See, e.g.*, *Hereford v. Warren*, 536 F.3d 523, 529-30 (6th Cir. 2008) (2-1 decision) (analyzing the content of a bench conference between the judge and prosecutor in the middle of trial to determine whether it was a "critical stage"); *McDowell v. Kingston*, 497 F.3d 757, 762 (7th Cir. 2007) (stating that there is no Supreme Court authority that a defendant's testimony, "isolated from the rest of his defense, constitutes a critical stage of the litigation"); *Vines*, 28 F.3d at 1128 ("we decline to give birth to a rule that the taking of evidence is necessarily a critical stage of trial").

the Sixth Amendment.[8] *See Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 211-12 & n.16 (2008) (explaining that, once the Sixth Amendment right to counsel has attached, a defendant is entitled to counsel at any "critical stage" of the proceeding).

Under the categorical approach, there is no doubt that, as the Eighth Circuit has stated, "trial is the paradigmatic critical stage." *Turner*, 975 F.2d at 496. Because Hawkins was physically absent (albeit very briefly) during trial, Sweeney was deprived of his right to counsel in violation of the Sixth Amendment, whether or not he was actually prejudiced by Hawkins's absence.

## 2. Does Harmless-Error Analysis Apply?

Having found that Sweeney's right to counsel was violated, the Court must next determine whether *Chapman*'s harmless-error analysis applies to this violation.

As discussed above, *Cronic* held that, when counsel is absent during a critical stage of a criminal proceeding, no showing of prejudice is necessary to make out a Sixth Amendment violation. *Cronic* said nothing about harmless-error analysis, but the opinion did not seem to contemplate that there would be further inquiry into the harmlessness of the violation. *See Cronic*, 466 U.S. at 658-61. The Supreme Court's later discussions of the *Cronic* rule have been in a similar vein. *Wright v. Van Patten*, 552 U.S. 120, 124-25 (2008) (per curiam); *Bell v. Cone*, 535 U.S. 685, 695-96 (2002); *Mickens v. Taylor*, 535 U.S. 162, 166 (2002); *Roe v. Flores-*

---

[8]Some courts acknowledge that this is what is generally meant by "critical stage," but opine that *Cronic* used the phrase "critical stage" in a more narrow sense to refer to a stage of a proceeding about which *two* things are true: First, there is a Sixth Amendment right to counsel, *and* second, denial of the right to counsel necessarily undermines the entire proceeding. *See, e.g., United States v. Owen*, 407 F.3d 222, 228 (4th Cir. 2005). The Court believes that the better approach is to recognize that a trial is always a "critical stage," but also to recognize that some absences from trial may be subject to harmless-error analysis.

*Ortega*, 528 U.S. 470, 483 (2000). Similarly, in *United States v. Turner*, the Eighth Circuit held that prejudice would be presumed when a lawyer was absent for parts of eight trial days:

> This is not a claim of ineffective assistance of counsel, with respect to which a close inquiry must be made into whether defendant was prejudiced. This is a claim that Turner had no lawyer of his own at all on parts of eight trial days. In such a situation, prejudice is presumed, or, to put it in plain words, prejudice need not be shown.

*Turner*, 975 F.2d at 496. Like the Supreme Court in *Cronic*, the Eighth Circuit in *Turner* gave no indication that harmless-error analysis would apply.[9]

Relying on this authority, Sweeney takes an all-or-nothing approach to *Cronic*. As Sweeney reads *Cronic*, a Sixth Amendment violation caused by the absence of counsel from a critical stage of a criminal proceeding must *always* result in the reversal of the uncounseled defendant's conviction.

But the all-or-nothing approach advocated by Sweeney cannot be reconciled with the fact that, both before and after *Cronic*, the Supreme Court has applied harmless-error analysis to denials of counsel at critical stages of criminal proceedings. *See Wade*, 388 U.S. at 242 (holding that post-indictment lineup was a "critical stage" at which the defendant was entitled to counsel, but remanding for a harmless-error analysis under *Chapman*); *Coleman v. Alabama*, 399 U.S. 1, 10-11 (1970) (denial of counsel at "critical stage" preliminary hearing was subject to harmless-error analysis under *Chapman*); *Rushen v. Spain*, 464 U.S. 114, 118-20 & n.2 (1983) (per curiam) (assuming that ex parte communication between judge and juror violated defendant's

---

[9]The Eighth Circuit affirmed Turner's conviction, but because it found that he had knowingly and intelligently waived his right to counsel, not because it found that the deprivation of that right had been harmless. *Turner*, 975 F.2d at 496. In this case, there is no basis for finding that Sweeney similarly waived his right to counsel.

Sixth Amendment right to counsel, it was harmless error); *Satterwhite v. Texas*, 486 U.S. 249, 256-57 (1988) (denial of right to consult counsel before submitting to a psychiatric examination in a capital case, which is a critical stage, was subject to harmless-error analysis).

Reading the relevant case law as a whole, the Court concludes that *some* denials of counsel require automatic reversal without any harmless-error inquiry, while *other* denials of counsel are subject to harmless-error analysis. The Supreme Court has stated that "Sixth Amendment violations that pervade the entire proceeding" are never harmless. *Satterwhite*, 486 U.S. at 256. In a later case (not involving a denial of counsel), the Supreme Court drew a distinction between "trial errors," which are subject to harmless-error analysis, and "structural defects," which are not. *Arizona v. Fulminante*, 499 U.S. 279, 307-10 (1991). "Trial error," in the Court's words, is "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Id.* at 307-08. "Structural defects," by contrast, "defy analysis by 'harmless-error' standards" because they "affec[t] the framework within which the trial proceeds" and are not "simply an error in the trial process itself." *Id.* at 309-10. A structural defect undermines the basic function of the trial to determine guilt or innocence. *Id.* A paradigmatic example of a structural defect is "the *total* deprivation of the right to counsel at trial." *Id.* at 309 (emphasis added). Other examples include a biased judge, unlawful exclusion of potential jurors on the basis of race, and denial of the right to a public trial. *Id.* at 309-10.

The Court believes that the analysis in *Fulminante* is the proper method to distinguish absences of counsel that require automatic reversal from absences of counsel that are subject to

harmless-error analysis. And applying *Fulminante* to the facts of this case, the Court believes that Hawkins's absence is more akin to a trial error that is amenable to harmless-error review than it is to a structural defect that calls into question the soundness of the entire proceeding. There is a fundamental difference between a total denial of counsel — which pervades the entire proceeding and makes it impossible to gauge how the assistance of counsel might have made a difference — and an attorney's momentary absence during a lengthy trial in which the attorney otherwise fully and actively participated. *See Ellis v. United States*, 313 F.3d 636, 643 (1st Cir. 2002) ("the doctrine of per se prejudice applies to a wholesale denial of counsel, whereas conventional harmless error analysis applies to a short-term, localized denial of counsel" (citation and quotations omitted)); *Arnold v. Evatt*, 113 F.3d 1352, 1361 (4th Cir. 1997) ("Only in cases where the deprivation of the right to counsel affected — and contaminated — the entire criminal proceeding is reversal automatic." (citation and quotations omitted)); *cf. Ditch v. Grace*, 479 F.3d 249, 255 (3d Cir. 2007) ("*Cronic* prescribes a presumption of prejudice only with regard to those critical stages of litigation where a denial of counsel would necessarily undermine the reliability of the entire criminal proceeding"). Even the Sixth Circuit, which seems to have gone the furthest in applying a presumption of prejudice when counsel is absent, has suggested that there might be absences so de minimis that a presumption of prejudice is unwarranted. *Atkinson v. United States*, 80 Fed. Appx. 422, 425 (6th Cir. 2003).

While the Court would not go so far as to call six pages' worth of trial testimony "de minimis," the Court believes that it is abundantly clear that Hawkins's brief absence did not pervade or contaminate the entire trial or affect the framework in which the trial proceeded. Hawkins was gone for about 3 minutes of a 13-day trial — or, put differently, during less than

6 pages of a trial record that spans over 2,500 pages. The fact that the record demonstrates precisely what Hawkins missed while he was out of the room — and the fact that his absence was so brief — allows the Court to confidently assess whether Sweeney was harmed by Hawkins's absence. Indeed, the Court is far better equipped to conduct a harmless-error analysis in this case than it is in other contexts, in which a substantial amount of speculation is unavoidable.

The Court acknowledges that the Eighth Circuit has several times suggested or implied that harmless-error analysis would not apply to the denial of counsel at trial, as opposed to the denial of counsel at a different critical stage of a criminal proceeding. *See Green v. United States*, 262 F.3d 715, 717-18 (8th Cir. 2001) (2-1 decision) (erroneous denial of counsel at § 2255 hearing is not subject to harmless-error analysis); *Turner*, 975 F.2d at 496 (presuming prejudice where counsel was gone for parts of eight trial days, but affirming on the basis of waiver); *Smith v. Lockhart*, 923 F.2d 1314, 1322 (8th Cir. 1991) ("Courts have, however, conducted a harmless error analysis when a defendant has been denied counsel at some types of preliminary hearings."). But both *Green* and *Smith* involved the absence of counsel during the *entire* critical stage (not just for a few minutes during the critical stage), and *Smith* did not concern the absence of counsel at trial. *Turner* did concern the absence of counsel at trial, but the facts of *Turner* were much more egregious than the facts of this case. The attorney in *Turner* was gone for portions of eight trial days, including half of the day devoted to voir dire. *Turner*, 975 F.2d at 495-96. The Eighth Circuit has never addressed a situation like Sweeney's, in which an attorney stepped out of the courtroom for three minutes, and in which the record makes clear exactly what occurred during those three minutes. In light of the Supreme Court decisions

described above, the Court believes that, when directly confronted with a case involving an attorney's momentary absence during a lengthy trial, the Eighth Circuit would find the absence to be reviewable for harmless error.

### 3. Was the Violation Harmless?

Having concluded that harmless-error analysis applies under the circumstances of this case, the Court readily concludes that the violation of Sweeney's right to counsel occasioned by Hawkins's absence from the courtroom was harmless beyond a reasonable doubt.

Quade, the co-conspirator who was testifying during Hawkins's absence, ran a business called Core Innovation Systems ("CIS") that bought and sold cable-television equipment. Trial Tr. 1313, 1315. CIS purchased descramblers from Micro-Star and resold them to other wholesalers. Trial Tr. 1332, 1341, 1345-46. Before Hawkins's absence, Quade testified about his company's purchase of descramblers from Micro-Star and the fact that the descramblers could be used to access cable without authorization from a cable company. Trial Tr. 1332, 1337-39, 1346. In the six pages of testimony during which Hawkins was absent, Quade testified about cashier's checks that CIS used to pay Micro-Star, the execution of a search warrant on his property, and his guilty plea and cooperation agreement with the government. Trial Tr. 1364-70. He also reiterated that the descramblers could be used to access cable without paying for it. Trial Tr. 1370. All of this evidence was essentially undisputed and was known to defense counsel well before trial; no one has suggested any objection that Hawkins could or should have made to any of this testimony.

Nor has anyone identified any area that Hawkins should have explored or any question that he should have asked when he cross-examined Quade. This is not surprising, as Hawkins's

cross-examination of Quade was extensive and effective. Hawkins testified that he got what he wanted from Quade — namely, testimony indicating the lack of anything other than a buyer-seller relationship between CIS and Micro-Star, which in turn supported the defense theory that there was no conspiracy and that the lengthy distribution chain separating the Sweeneys from end users undermined any inference of unlawful intent on the Sweeneys' part. Hr'g Tr. 105-07; *see also* Hr'g Tr. 70.

The trial record backs up Hawkins's recollection. Hawkins cross-examined Quade about his minimal personal acquaintance with Sweeney; the availability from other vendors of the type of descramblers sold by Micro-Star; the fact that Quade never represented CIS to be anything other than a wholesaler; the fact that Quade never advised the Sweeneys about the law-enforcement search; and generally the lack of any indicia that CIS and Micro-Star had anything more than a buyer-seller relationship. Critically, Hawkins cross-examined Quade about subjects that had come up on direct while Hawkins was out of the courtroom (including the execution of the search warrant on Quade's property, Trial Tr. 1398, 1402-03) and about various exhibits that were admitted or referenced during Hawkins's absence, Trial Tr. 1402-04, 1409.[10] Hawkins also elicited testimony about the lawful uses for descramblers, Trial Tr. 1427-31, and the fact that Sweeney had explored getting FCC approval to sell to end users, Trial Tr. 1379-80, both of which suggest the lack of an unlawful motive on Sweeney's part.

---

[10]Hawkins did not cross-examine Quade about his guilty plea or cooperation agreement with the government, but that was clearly the product of strategic choice rather than ignorance. There is no question that Hawkins was aware of the plea, given that he requested a limiting instruction about it as soon as he returned to the courtroom. Trial Tr. 1371-72. Moreover, Hawkins did not question Quade's business partner, Abraham Paquette, about his guilty plea and cooperation agreement, even though Hawkins was present during the entirety of Paquette's testimony.

It is also worth noting that Brink, Michelle's lawyer, was present during Hawkins's brief absence. Hawkins and Brink had a joint-defense agreement to which the Sweeneys had consented, Hr'g Tr. 46-48, and they worked closely together in presenting the Sweeneys' defense — which, as noted, focused on lack of intent. When Hawkins left the courtroom, he expected that Brink would tell him if anything important had happened in his absence. Hr'g Tr. 104-05. Although it is true that Michelle also defended herself on the ground that she was not very involved in the business, the Sweeneys' defenses were not at all antagonistic, and anything that Brink could have done to show lack of intent would have inured to Jon's benefit as well.

Of course, Brink was not acting as Jon's lawyer during Hawkins's absence. Nonetheless, Brink's presence is relevant to the harmless-error inquiry because an experienced defense lawyer with the incentive and the ability to aid Jon's case was present during Hawkins's absence and was able and willing to communicate with Hawkins about anything that happened during that absence — including anything significant that would not appear in the record, such as Quade's tone of voice, facial expressions, or hesitation in answering a question.

The Court therefore finds that Hawkins's brief absence was harmless beyond a reasonable doubt. Jon Sweeney is not entitled to relief either on the ground that Hawkins was absent from trial or on the ground that Hawkins was ineffective for failing to raise the issue of his absence on appeal.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant Jon Sweeney's motion to vacate, set aside, or correct his sentence [ECF No. 407] is DENIED.

2. Defendant Michelle Sweeney's motion to vacate, set aside, or correct her sentence [ECF No. 410] is DENIED.

3. The Court grants a certificate of appealability to Jon Sweeney on the following issue only:  Is the actual absence of counsel from trial for a brief period of time during the direct testimony of a government witness subject to harmless-error analysis?

4. No other certificate of appealability will issue.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  April 3, 2013

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge